<u>FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL MOE,<br>    *Defendant.* | Crim. No.: 17-277 (KSH)<br><br><u>OPINION</u> |

I.  **Background**

  Following a jury trial, defendant Paul Moe was convicted of 13 counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. (D.E. 62, Judgment.) He was sentenced in March 2018 to 24 months' imprisonment on all 14 counts, to run concurrently, followed by 3 years of supervised release, and was ordered to pay restitution of $740,719.90. (*Id.*) The Court recommended that Moe be designated and permitted to self-surrender to FCI Fort Dix and continued his bail pending appeal. This opinion sets forth the Court's final decision denying his application for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which was rendered orally on June 2, 2021, and is formalized and supplemented herein.

  Initially, some detail is necessary to illustrate the procedural context in which Moe's motion came on for decision. He timely appealed his conviction on April 9, 2018, and his appeal was deemed submitted for decision on March 15, 2019. (D.E. 64, 80.) While the Third Circuit's decision, ultimately issued in April 2020, was pending the parties agreed to several extensions of Moe's surrender date and,

1

ultimately, that any extension beyond July 15, 2019 would require Moe to satisfy the standards for bail pending appeal under 18 U.S.C. § 3143(b). (D.E. 72, 73.) Moe made such an application on June 14, 2019, and over the government's objection, this Court continued bail by order dated July 3, 2019. (D.E. 74-79.)

When the Third Circuit's decision affirming Moe's conviction issued on April 17, 2020, the COVID-19 pandemic was just underway. On April 20, 2020, the Court, acting on the government's request,[1] set Moe's voluntary surrender date for no earlier than July 20, 2020, in light of the pandemic. (D.E. 82.) This date was later extended, on the parties' consent, to no earlier than October 5, 2020. (D.E. 92.)

On June 23, 2020, Moe filed an emergent motion to convert his sentence to probation with home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (D.E. 86.)[2] He cited his age (69 at the time of the motion, now 70) and his various medical conditions, which include insulin-dependent Type 2 diabetes, COPD, sleep apnea, hypertension, obesity, chronic fatigue, and high cholesterol.[3] He also noted that due to his sleep apnea, he uses a CPAP machine, which, if he contracted COVID-19 in

---

[1] The government requested a surrender date on or about July 16, 2020, a Thursday. (D.E. 81.)

[2] Moe represented that prior to his filing, he requested, through counsel, that the Bureau of Prisons file a motion for compassionate release on his behalf, and was told that the BOP would not act on it and that the request could be submitted once he arrived at his designated correctional facility. (D.E. 86-1, Moving Br. 1-2, 11; *see also* D.E. 86-4, Ex. E; D.E. 86-5, Ex. F.)

[3] Moe further notes that since his sentencing, he has also developed the following conditions: "(1) Recurring bronchitis with wheezing and bronchospasms which require an inhaler; (2) Acid Reflux; (3) Hypothyroidism; (4) Prostatic Enlargement; and (5) Vitamin D Deficiency." (D.E. 86-1, Moving Br. 5.)

custody, could aerosolize the virus. He contended that if he remained on release, he would present no danger to the community, and that the congregate setting of Fort Dix, along with the movement of staff in and out of the camp and the main facility and throughout the community, and the "hotbed" nature of Fort Dix for COVID-19 infections all posed significant risk to him. Moe further argued that he would remain at "grave risk" in *any* BOP facility, citing the high number of cases, lack of testing, and inadequate protocols. (D.E. 86-1, Moving Br. 12-19, 25-26.)

In opposition, the government argued that § 3582(c)(1)(A)(i) does not apply to defendants like Moe who have not yet begun serving their sentences and does not permit the entire sentence to be converted to home confinement. (D.E. 93, Govt. Opp.) The government argued that, instead, 18 U.S.C. § 3143(a)(1), which deals with release pending sentence, coupled with a delay of Moe's surrender date, would be the appropriate means of addressing Moe's concerns. Granting what Moe sought would, according to the government, amount to an unauthorized plenary resentencing. The government also contended that even if Moe could invoke the compassionate release statute at this juncture, his application would fail on its merits.

In reply Moe relied on *United States v. Austin*, 2020 WL 3447521 (S.D.N.Y. June 22, 2020), and other rulings that provided relief to defendants not in BOP custody. (D.E. 95.) He also argued that it would be nonsensical to require him to report to prison just to make the same request again, particularly where he had already made a request for relief from the BOP and been denied. Additionally, Moe

argued that home confinement would be sufficiently punitive, reiterated his concerns about the risk of contracting the virus while incarcerated, and contended that resentencing, not continually delaying his surrender date, is the answer. The government filed a sur-reply (D.E. 96) addressing certain case law Moe had cited in his reply, and later a supplemental letter with additional authority (D.E. 97). The Court heard oral argument on October 1, 2020. The outcome was an extension of the surrender date to after February 1, 2021, with additional briefing due in advance given the unfolding nature of information about the pandemic. Moe's surrender date was ultimately extended to no earlier than June 15, 2021.

In the additional briefing the parties have largely kept to their earlier arguments, citing to updated case law. (D.E. 104, 106-07, 110, 112.) Both sides addressed the emergence of effective vaccines, the government arguing that they negate the existence of extraordinary and compelling reasons for a reduction in sentence, and the defense countering that although Moe was scheduled to get his first Moderna dose at the end of April, he would still be at risk for COVID-19 in a prison setting, including in Fort Dix where many inmates and staff were refusing vaccination.

The Court rendered its decision denying the motion in a telephone conference on June 2, 2021, and set a surrender date of August 16, 2021 to leave sufficient time for medical procedures Moe represented he needed before he surrendered.

II.   Discussion

In reaching its decision the Court begins with the statute itself, which provides as follows:

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

This section sets forth a substantive test that many courts, including this one, have applied in reviewing motions seeking compassionate release based on the COVID-19 pandemic: (1) extraordinary and compelling reasons warrant a reduction in sentence; (2) the applicable § 3553(a) factors warrant the reduction; and (3) the reduction would be consistent with applicable policy statements of the U.S. Sentencing Commission.  The applicable policy statement, in turn, is found in

U.S.S.G. § 1B1.13, which, among other things, adds a requirement that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g), and in the application notes provides that that extraordinary circumstances exist in specified circumstances involving the defendant's medical condition, age, or family circumstances.  U.S.S.G. § 1B1.13, Application Note 1(A)-(C). The application notes also contain a catchall provision in section 1(D): "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

Before this substantive test can be applied, courts in this Circuit must be satisfied that a defendant has in fact fully exhausted his administrative rights to relief within the BOP, as set down by the Third Circuit within weeks of the start of the COVID-19 pandemic. *United States v. Raia*, 954 F.3d 594 (3d Cir. 2020). Once the defendant has fully exhausted his administrative appeal rights within the BOP, or if 30 days have gone by since his request to the warden, whichever is earlier, he may bring the motion before the district court. *Id.* at 595 (citing 18 U.S.C. § 3582(c)(1)(A)). *Accord United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020).

Moe remained on release after oral argument in October 2020, and both sides took the position that by making the effort to get a decision from the Warden of FCI Fort Dix before he filed his motion in June 2020, he had effectively exhausted his remedies for purposes of the instant motion. As indicated earlier, the Court extended Moe's surrender date, and the presenting issue for decision as the June

6

15, 2021 "not before" date approached remained: does Moe have any right to invoke § 3582(c)(1)(A) to seek relief when he is not yet serving his prison sentence?

Both sides agree there is currently no binding Third Circuit law on that issue, and each has brought to the Court's attention, on a rolling basis, various district court decisions supporting their respective positions.

In this district, as far back the fall of 2020, Judge Chesler ruled in *United States v. Picardo*, 2020 WL 6501730 (D.N.J. Nov. 5, 2020), that sentencing relief was unavailable to a defendant who had not begun to serve his sentence. This is a case bearing similarities to Moe's: the defendant had some of the same medical conditions and was also designated to the satellite camp at Fort Dix. In reaching his decision, Judge Chesler held that "the entire scheme of the provision [*i.e.*, § 3582(c)(1)(A)] contemplates that the defendant seeking relief has already begun serving his or her sentence." 2020 WL 6501730, at *2. Because Picardo had not "served a single day of his 366-day term of imprisonment," "it would appear that the relief offered by Section 3582(c)(1)(A) is not available to him." *Id.* (citing *United States v. Konny*, 463 F. Supp. 3d 402 (S.D.N.Y. 2020); *United States v. Spruill*, 2020 WL 2113621, at *3 (D. Conn. May 4, 2020)).

Judge Chesler further observed that the court's authority to reduce a term of imprisonment under § 3582(c) is limited: it allows the court to reduce a custodial term and to impose probation or supervised release not exceeding the unserved portion of the original term of imprisonment, but not to resentence, and not to conduct a plenary resentencing proceeding. *Id.* (citing statute and *United States v.*

7

*Dillon*, 560 U.S. 817, 820, 826 (2010)).  And he concluded that was exactly what Picardo was asking the court to do:

> Picardo requests that the Court modify his sentence so that he may serve his entire sentence on probation with a home confinement condition. **This is not a reduction in the term of imprisonment ordered by the Court in the February 4, 2020 judgment of conviction. It is, essentially, a request for a new sentence, and thus exceeds the limited relief available under Section 3582(c)(1)(A).** *See Konny*, 2020 WL 2836783, at *2 (holding that Section 3582(c)(1)(A)(i) "does not provide a basis for the Court to convert the defendant's term of imprisonment into a term of home confinement before he has self-surrendered to the BOP"); *Spruill*, 2020 WL 2113621, at *3 (concluding that in moving for relief before commencing his custodial sentence, the defendant sought resentencing and thus could not avail himself of compassionate release, reasoning that it is "a statutory exception to the prohibition against resentencing contained in 18 U.S.C. § 3582(c).")

*Id.* (emphasis added).

*Picardo* has been followed in this district. *United States v. Desu*, 2021 WL 2012235, at *3 (D.N.J. Apr. 30, 2021) (Shipp, J.); *United States v. Ahmad*, 2021 WL 1300288 (D.N.J. Apr. 7, 2021) (Arleo, J.).  In *Desu*, Judge Shipp had previously extended the defendant's surrender date three times before ultimately agreeing with Judge Chesler's ruling in *Picardo* that relief under § 3582(c)(1)(A) is unavailable to defendants who have not begun to serve their sentences.  2021 WL 2012235, at *3.  Denying Desu's motion for compassionate release without prejudice and his emergency motion to further continue his surrender date, Judge Shipp ordered him to report as scheduled to Fort Dix on May 5, 2021.  Similarly, Judge Arleo had extended Ahmad's surrender date, originally June 16, 2020, "multiple times," and in the cited order, relied on *Picardo* and denied relief.

More recently, Judge Broderick of the Southern District of New York denied a similar motion as premature in *United States v. Javed*, 2021 WL 2181174 (S.D.N.Y. May 27, 2021), coming to the same conclusion as Judge Chesler that defendant "essentially asks me to resentence him, and I see no reason to do so here." *Id.* at *5. Significantly, Judge Broderick also noted that the First Step Act "did away with the BOP's unilateral ability to deny a prisoner compassionate release but did not remove the BOP from the process entirely." *Id.* at *2.

The BOP's role is evident from the moment sentence is formally imposed. When a judge in this district speaks the sentence at the crescendo moments of a sentencing hearing, the prescribed language commits the defendant to BOP custody for the term imposed. So too here; at Moe's March 26, 2018 sentencing, the Court pronounced as follows:

> **It is [the] judgment of this Court that Paul Moe is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 24 months on each of Counts 1 through 14, all such terms to be run concurrently.**

(Sent'g Tr. 39:14-17.)

The court *turns the defendant over to the custody of the BOP*. That judicial act is not affected by whether the defendant is detained at the time of sentencing, is arrested immediately after the sentence is spoken on the record, or is granted voluntary surrender and later receives a surrender date to report to a specific correctional facility that the BOP designates. The Court's judgment is that the defendant goes into BOP custody, and when it receives the defendant's person that

9

agency will make the minute by minute decisions about how that defendant will exist for the term of the Court's sentence.

Moe has urged that requiring him to report only to repeat the process of applying for relief on the substantive grounds now before the Court constitutes the "dilemma" that Judge Chesler noted in *Picardo*, 2020 WL 6501730, at *3. And as the Court has denied his motion without prejudice, it is likely that the arguments already fully briefed on whether he merits compassionate release will be made again. But accepting that when it sentenced him the Court entered a judgment committing him to the custody of the Bureau of Prisons for 24 months makes natural and logical that the authority to grant or deny compassionate release belongs to the agency, not the judge, and only goes to the judge in the event the agency denies or fails to respond to the request. The agency, after all, decides when prisoners will sleep, when and what they will eat, when and how they will recreate, work, and get instruction and training and medical care and by whom, and in what facility or facilities they will live for the duration of the sentence. The First Step Act only narrowly carved into that broad authority by granting a prisoner the ability to bring a rejected petition for compassionate release to court under very specific circumstances; it decidedly did not partner up the judge with the agency.

Accepting the foregoing does not interfere with the objectives of the First Step Act. The district court, when it exercises its jurisdiction under § 3582(c)(1)(A), makes its own independent determination about whether a prisoner has presented extraordinary and compelling reasons for sentencing relief and applies the § 3553(a)

10

factors to circumstances as they then exist.  In short, the First Step Act provides judicial review of the BOP's decisions denying compassionate release under legal standards that are uniquely the provenance of a sentencing judge.

Notwithstanding the breadth of the analysis the court may, and indeed must, make when a motion for compassionate release is properly before it, the Court concludes that the BOP first decide Moe's compassionate release request.  As the procedural history of this case demonstrates, the time has come for Moe, who is now fully vaccinated, to serve his sentence.  When counsel argued in October 2020 (then some 30 months after Moe was sentenced), the government observed that extending the surrender date was appropriate at that point, but "we do know at some day we need to cross that bridge" of deciding the issue at hand.  (D.E. 100, 10/1/20 Tr. 35:11-12.)  The Court has now decided the issue and determined it is without jurisdiction to act on Moe's motion, and that it may not address the merits until he has begun to serve his sentence.

### III.   Conclusion

The motion (D.E. 86) for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied and, as stated on the record on June 2, 2021, Moe shall self-surrender on Monday, August 16, 2021.  An appropriate order will issue.


Dated:  June 9, 2021                                           /s/ Katharine S. Hayden
                                                               Katharine S. Hayden, U.S.D.J.

11